UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

CASS, INC., a California corporation,

    Plaintiff,

v.

PRODUCTION PATTERN AND FOUNDRY CO., INC., a Nevada corporation, aka PRODUCTION PATTERN & FOUNDRY,

    Defendant.

3:13-CV-00701-LRH-WGC

ORDER

    Before the Court is Defendant Production Pattern and Foundry Co., Inc.'s ("PPF") Motion to Dismiss Plaintiff CASS, Inc.'s ("CASS") First Amended Complaint ("FAC"). Doc. #30.[1] CASS filed an Opposition (Doc. #36), to which PPF Replied (Doc. #39).

**I.    Factual Background**

    This action involves a dispute arising from an alleged agreement between CASS and PPF for brokerage services. According to the FAC, CASS "arranged for the delivery of material at a specified and agreed to price for PPF." Doc. #27, ¶5. CASS then, "acting solely as a broker . . . arranged for the delivery of material to be sent directly to Nevada by a third party supplier." *Id.* ¶7. In reliance on this alleged agreement, CASS entered into several agreements

---

[1] Refers to the Court's docket number.

with Alcoa Primary Metals ("Alcoa")[2] to arrange for the materials to be provided to PPF. *Id.* ¶8. CASS alleges that PPF failed to satisfy its agreements with CASS by failing to fulfill the sales orders, failing to unwind the agreements, and failing to pay for the rollover charges, fees, and costs that CASS was required to incur to Alcoa. *Id.* ¶14. CASS further alleges that PPF breached the aforementioned agreements when it failed to pay the amounts due on the sales invoices for the services, equipment, and material received by PPF. *Id.* ¶24.

On December 23, 2013, CASS filed a Complaint alleging causes of action for (1) breach of contract, (2) breach of contract, (3) account stated, (4) mutual open account, (5) quantum meruit/ unjust enrichment, and (6) breach of the implied covenant of good faith and fair dealing. Doc. #1. On March 13, 2014, PPF filed a Motion to Dismiss CASS's Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Doc. #9. The Court granted PPF's Motion without prejudice on August 7, 2014. Doc. #25. CASS filed the FAC on September 5, 2014 (Doc. #27), and PPF filed its Motion to Dismiss the FAC on September 25, 2014 (Doc. #30).

**II.     Legal Standard**

To survive a motion to dismiss for failure to state a claim, a complaint must satisfy the Federal Rule of Civil Procedure 8(a)(2) notice pleading standard. *See Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1103 (9th Cir. 2008). That is, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Rule 8(a)(2) pleading standard does not require detailed factual allegations; however, a pleading that offers "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Furthermore, Rule 8(a)(2) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550

---
[2] Alcoa is not a party to this action.

2

1 U.S. at 570). A claim has facial plausibility when the pleaded factual content allows the Court to draw the reasonable inference, based on the Court's judicial experience and common sense, that the defendant is liable for the misconduct alleged. *See id.* at 678-79. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678 (internal quotation marks and citation omitted).

In reviewing a motion to dismiss, the court accepts the facts alleged in the complaint as true. *Id.* However, "bare assertions . . . amount[ing] to nothing more than a formulaic recitation of the elements of a . . . claim . . . are not entitled to an assumption of truth." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (citing *Iqbal*, 556 U.S. at 681) (brackets in original) (internal quotation marks omitted). The Court discounts these allegations because "they do nothing more than state a legal conclusion—even if that conclusion is cast in the form of a factual allegation." *Id.* (citing *Iqbal*, 556 U.S. at 681). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Id.*

### III. Discussion

#### A. First Breach of Contract Claim

To prevail on a breach of contract claim, a plaintiff must demonstrate: (1) the existence of a valid contract; (2) that plaintiff performed or was excused from performance; (3) a breach by the defendant; and (4) damages resulting from defendant's breach. *See* Restatement (Second) of Contracts § 203 (2007); *see also Saini v. Int'l Game Tech.*, 434 F. Supp. 2d 913, 919-20 (D. Nev. 2006) (citing *Richardson v. Jones*, 1 Nev. 405, 405 (1865)); *Armstrong Petroleum Corp. v. Tri–Valley Oil & Gas Co.*, 11 Cal. Rptr. 3d 424 n.6 (Cal. Ct. App. 2004). An enforceable contract requires: (1) an offer and acceptance; (2) meeting of the minds; and (3) consideration. *May v. Anderson*, 119 P.3d 1254, 1257 (Nev. 2005).

In the prior Order granting PPF's Motion to Dismiss the original Complaint, the Court noted that this claim did not even state whether the alleged breached contract was an oral or written contract. Doc. #25 at 5. The Court added that the letters attached to the Complaint did "not amount to an adequate allegation of the existence of a valid contract." *Id.* at 5-6. Finally, the Court stated that it was "unable to decipher how PPF's failure to fulfill the sales orders, failure to pay to unwind a portion of the alleged agreement with CASS, and failure to pay for the rollover charges, fees, and costs that CASS incurred to Alcoa was a breach of the alleged agreement." *Id.* at 6. PPF argues that despite adding some details in the FAC, "[t]here is simply nothing in CASS's amended Complaint that plausibly suggests that PPF had any obligation to accept 1,989,990 pounds of metal on or before June 24, 2010, or to pay CASS, or Alcoa, for 'rollover charges, fees, costs, and penalties.'" Doc. #30 at 3-4.

The FAC improves upon the original Complaint in several important respects. First, the FAC states that the contracts were based on "written agreements" between the parties. Doc. #27 ¶12. The FAC also provides more information about the alleged contract between the parties, and particularly PPF's alleged acceptance. The FAC states:

> PPF acknowledged the terms of the agreements as evidenced, for example, by: accepting some material pursuant to the sales orders, signing the original sales order 17675; the email dated July 28, 2008, attached as **Exhibit A**; the email dated June 18, 2010, attached as **Exhibit C**, stating that PPF would consume or unwind all of the 1,989,900 pounds of aluminum; the letter dated August 2, 2010, attached as **Exhibit D**, stating that PPF would unwind 45,000 pounds of aluminum and corresponding invoice 29784 to unwind the 45,000 pounds of aluminum, attached hereto as **Exhibit E**.

*Id.* ¶16. The FAC also provides more information regarding PPF's obligations for costs that CASS incurred to Alcoa. Specifically, the FAC states that CASS contracted with Alcoa[3] to secure the amount of aluminum that had been ordered by PPF and that PPF expressly agreed to unwind all

---

[3] PPF argues that because the documents produced by CASS in Exhibit C are between Alcoa and "Custom Alloy Scrap," these documents do not even indicate the existence of a contract between Alcoa and CASS. CASS stated in its opposition, however, that "CASS and Custom Alloy Scrap Sales, Inc. is the same entity." Doc. #36 at 7.

1,989,990 pounds of aluminum that it ordered. *Id.* ¶¶ 12, 14, 16. CASS also attached a letter to the PAC in which PPF stated its intent "to consume or unwind these hedges based on the contract agreement between" PPF and CASS "for all of the 1,989,990 pounds of aluminum." *See id.*, Ex. C.

The FAC still fails in two important respects. The FAC states that:

> After months of discussion between CASS and PPF that PPF needed to either take the 1,989,900 pounds of material or pay for the rollover charges, fees, costs, and penalties, on May 24, 2010, CASS notified PPF that it received an invoice from Alcoa in excess of $1,000,000 for the material that PPF ordered but refused to accept. CASS notified PPF that it needed to take immediate action to either take the material it ordered or pay for the costs, fees, and penalties associated with not taking the material.

*Id.* ¶17. Even assuming the existence of a valid contract between CASS and PPF, the FAC does not allege that PPF had an obligation to accept the 1,989,990 pounds of aluminum from CASS (or Alcoa) by May, 24, 2010, and the attached documents do not state that PPF must accept the entire order by that date. The FAC also does not allege that any agreement between CASS and PPF stated that failure to accept the entire order by May 24, 2010 would require PPF to pay "rollover charges, fees, costs, and penalties." Without such language, CASS cannot allege that failure to accept the entire 1,989,990 pounds of aluminum by May 24, 2010, or pay the associated rollover charges and penalties, constituted a breach of a contract between the parties. Accordingly, the Court grants PPF's Motion to Dismiss as to the first breach of contract claim because CASS has failed to state a claim upon which relief can be granted.

### B. Second Breach of Contract Claim

#### 1. Statute of Limitations

PPF argues that CASS' second breach of contract claim is barred by Nevada's four-year statute of limitations for contracts not founded upon a writing. Doc. #30 at 10. Where the facts and dates alleged in the complaint indicate the claim is barred by the statute of limitations, a motion to dismiss for failure to state a claim may lie. *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980). If, however, the running of the statute of limitations cannot be determined from the face of the complaint, a motion for summary judgment is the proper avenue for determining

whether a cause of action is time barred. *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206-07 (9th Cir. 1995). Finally, "a complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *Id.* at 1207 (citing *Conley v. Gibson*, 355 U.S. 41, 78 (1957)). In both Nevada and California, a cause of action accrues, thereby triggering the statute of limitations, when the wrong occurs and the plaintiff sustains the injury for which relief is sought.[4] *Petersen v. Bruen*, 106 Nev. 271, 274 (1990) (citing *Nelson v. A.H. Robbins Co.*, 515 F. Supp. 623, 625 (N.D. Cal. 1981)).

The Court previously declined to dismiss CASS' second breach of contract claim on this ground because it could not be ascertained from the Complaint, or the exhibits incorporated by reference therein,[5] the precise date on which CASS' breach of contract claims accrued. Doc. #25 at 4. PPF now revives its statute of limitations argument by arguing that if PPF breached a contract, "the 'wrong' to CASS occurred, and the statute of limitations was triggered, the day after payment was due." Doc. #30 at 10. Since the most recent payment due date was April 5, 2009, the statute of limitations would have run, based on PPF's analysis, on April 6, 2013, more than eight months before CASS filed its Complaint on December 23, 2013. *Id.* CASS contends that the breach occurred when PPF refused to make any further payments, which occurred on July 9, 2010. Doc. #36 at 12. Indeed, the FAC states that the breach occurred after PPF failed to make further payments to CASS after the $5000 payment on July 9, 2010. Doc. #27 ¶31. Moreover, the

---

[4] Nevada Revised Statute 11.190 provides a six-year limitation period for written contract actions and a four-year limitation period for contracts not founded upon a writing. California Code of Civil Procedure §§ 337 and 339 provide a four-year statute of limitations for written contracts and a two-year statute of limitations for contracts not founded on a writing. Nevertheless, the Court declines to rule on whether Nevada or California law governs the alleged agreements at issue, as such a determination is not proper for purposes of the present Motion to Dismiss.

[5] Under FRCP 12(b)(6), the Court may consider matters that are subject to judicial notice. *Mullis v. United States Bankruptcy*, 828 F.2d 1385, 1388 (9th Cir. 1987). The Court may take judicial notice "of the records of state agencies and other undisputed matters of public record" without transforming the motions to dismiss into motions for summary judgment. *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 866 (9th Cir. 2004). The Court may also examine documents referred to in the complaint, although not attached thereto, without transforming the motion to dismiss into a motion for summary judgment. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

documents attached to the FAC indicate that the regular business relationship between CASS and PPF involved PPF paying past debts over a period of time, rather than immediately when they were due. *See id.*, Ex. C (noting that PPF's debt had been reduced by 50% over two years).

As before, the Court cannot ascertain from the complaint, or the exhibits incorporated by reference therein, the precise date on which CASS' second breach of contract claim accrued. Accordingly, the Court cannot grant PPF's Motion to Dismiss on this ground. *See Supermail Cargo*, 68 F.3d at 1206-07.

### 2. Notice Pleading Under Federal Rule of Civil Procedure 8(a)(2)

CASS' second breach of contract claim is not marred by the same deficiencies as its first breach of contract claim. First, CASS has alleged the existence of a valid written contract. The FAC states that "CASS and PPF negotiated and entered into several written agreements wherein CASS, acting solely as a broker, agreed to arrange for material to be provided to PPF by a third party supplier." Doc. #27 ¶24. The FAC further states that CASS fulfilled its duty when it arranged for the supplies to be sent to PPF, and that "PPF received and accepted the material." *Id.* ¶¶28-29. The FAC alleges that PPF breached these contracts "when PPF refused to make any further payments on the invoices" that CASS had provided. *Id.* ¶31. Finally, the FAC alleges that CASS suffered damages as a result of PPF's breach. *Id.* ¶32.

PPF's primary argument is that the FAC cannot state a claim as to this second claim for breach of contract claim because the allegations are "essentially the same" as the allegations in the original Complaint, which Court previously held was unable to demonstrate the existence of a valid contract. Doc. #25 at 5. However, the FAC improves upon the original complaint by (1) stating the existence of a *written* contract, and (2) stating that PPF received and accepted the aluminum and acknowledged that it had an obligation to pay its outstanding balance with CASS. Doc. #27 ¶¶24, 28-29.

PPF argues that the documents attached to the FAC cannot indicate the existence of a contract because some are not signed. Courts have long held that parties "may adopt a written

7

contract, and thus make it binding as though formally executed by both, without signing it." *U.S. Fid. & Guar. Co. v. Reno Elec. Works*, 183 P. 386, 387 (Nev. 1919); *see Baran v. Venetian Casino Resort, LLC*, No. 2:07-cv-1438, 2008 WL 4446994, at *2 (D. Nev. Sept. 26, 2008). "If a person accepts and adopts a written contract, even though it is not signed by him, he is deemed to have assented to its terms and conditions and to be bound by them." *Reno Elec. Works*, 183 P. at 387 (internal quotation omitted). Although some of the documents to which CASS refers were not signed by PPF, PPF's acceptance of the materials that were the subject of these agreements would indicate that it accepted and adopted the contract that CASS alleges was a valid written contract in the FAC. The FAC alleges further that CASS performed its obligations under the contract, PPF breached, and CASS incurred damages. Accordingly, the Court denies PFF's Motion to Dismiss as to this claim because the FAC fulfilled the notice pleading standard as to CASS' second claim for breach of contract.

### C. Account Stated

> An account stated may be broadly defined as an agreement based upon prior transactions between the parties with respect to the items composing the account and the balance due, if any, in favor of one of the parties. To effect an account stated, the outcome of the negotiations must be the recognition of a sum due from one of the parties to the other with a promise, express or implied, to pay that balance. The amount or balance so agreed upon constitutes a new and independent cause of action. The genesis of an account stated is the agreement of the parties, express or implied.

*Old W. Enterprises, Inc. v. Reno Escrow Co.*, 476 P.2d 1, 2 (Nev. 1970).[6] The Court previously dismissed CASS' claim for account stated because there was "no indication that CASS and PPF agreed to an amount or balance outstanding or that PPF made a promise, express or implied, to pay

---

[6] The law in California with respect to account stated is not materially different from that in Nevada. *See Mercantile Trust Co. v. Doe*, 26 Cal. App. 246, 252 (1914) ("An account stated requires that there be an agreement, expressed or implied, that the balance is correct and this agreement constitutes a new contract which takes the place of the original contract whether open or closed."); *see also Hallford v. Baird*, 27 Cal. App. 2d 384, 389 (1938) ("An account stated alters the nature of the original indebtedness, and is itself in the nature of a new promise or undertaking. . . . An action on an account stated is not founded upon the original items, but upon the balance ascertained by the mutual consent of parties.") (quoting *Carey v. The Phila. & Cal. Petroleum Co.*, 33 Cal. 694, 696 (1867)).

any amount or balance of indebtedness." Doc. #25 at 7.

The FAC contains significantly more information regarding PPF's supposed agreement to pay a debt to CASS but still falls short of stating a claim for account stated. The FAC refers to emails in which PPF stated that it would "continue to meet [its] obligations to CASS," and noted that the debt had been reduced by half over two years, indicating PPF's recognition of the debt and intent to pay. Doc. #27 ¶38; *id.*, Ex. C. CASS refers to another email in which PPF stated that it would consume or unwind all of the 1,989,990 pounds of aluminum. *Id.* ¶39. The Court held previously that these emails "do not evidence an agreement between CASS and PPF as to any particular amount of indebtedness or a promise by PPF to pay such indebtedness." Doc. #25 at 7. CASS has not referred to new evidence that would indicate an agreement to pay a particular amount of indebtedness, and the Court sees no reason to depart from its prior ruling on this matter. Accordingly, the Court grants PPF's Motion to Dismiss as to CASS' claim for account stated.

**D. Mutual Open Account**

To establish a claim for mutual open account, "there must be mutual demands between the parties—demands upon which each might maintain an action." *Warren v. Sweeney*, 4 Nev. 101, 102 (1868). However, "[w]here payments on account are made by one party, for which credit is given by the other, it is an account without reciprocity, and only upon one side." *Id.* As such, "it cannot be said to be a mutual account consisting of reciprocal demands."[7] *Id.* An "account is not mutual unless the parties have dealt with each other in the same relation and the items upon the different sides of the account are capable of being set off against each other." *Millet v. Bradbury*, 109 Cal. 170, 175 (1895).

//

---

[7] Here too, the law in California with respect to mutual open account is not materially different from that in Nevada. *See O'Neill v. O'Neill*, 45 Cal. App. 772, 775 (1920) (there must be reciprocal demands to constitute a mutual open account); *Weatherwax v. Consumnes Valley Mill Co.*, 17 Cal. 344, 351 (1861) ("[I]t is well settled that where payments have been made by one party, for which credit is given by the other, it is an account without reciprocity and only upon one side") (internal quotation marks and citations omitted).

CASS alleges that mutuality and reciprocity exists between the parties because PPF "entered into an agreement(s) with one of its customers, PACCAR, to provide materials. PPF then entered into agreements with CASS so that PPF would be able to fulfill its orders with PACCAR. This allowed CASS the opportunity to benefit from an agreement that PPF had with its customer PACCAR." Doc. #27 ¶45. The FAC adds that CASS then "entered into agreements with Alcoa in order to arrange for material to be sent to PPF at a specified and agreed to fixed price. This allowed PPF the opportunity to benefit from an agreement between CASS and Alcoa in order to receive a fixed price." *Id.* ¶46.

These allegations are insufficient to constitute mutuality and reciprocity to support a claim for mutual open account. *See Parker v. Shell Oil Co.*, 175 P.2d 838, 841 (Cal. 1946) ("It is not enough, to constitute a mutual account, that there exists debts which could be the subject of setoff; there must be an understanding, express or implied from the nature of the dealings between the parties, that the charges on each side are to extinguish pro tanto those on the other side, so that there exists but one, indivisible liability arising from the series of transactions."). Accordingly, the Court grants PPF's Motion to Dismiss as to CASS' claim for mutual open account for failure to state a claim upon which relief can be granted.

### E. Breach of the Implied Covenant of Good Faith and Fair Dealing

"It is well established that all contracts impose upon the parties an implied covenant of good faith and fair dealing, which prohibits arbitrary or unfair acts by one party that work to the disadvantage of the other." *Nelson v. Heer*, 163 P.3d 420, 427 (Nev. 2007). Where one party to a contract "deliberately contravenes the intention and spirit of the contract, that party can incur liability for breach of the implied covenant of good faith and fair dealing." *Hilton Hotels v. Butch Lewis Prods.*, 808 P.2d 919, 923 (Nev. 1991). To survive a Motion to Dismiss a claim for breach of the implied covenant of good faith and fair dealing, plaintiff must (1) identify the contract that is the basis for the claim, (2) identify the conduct that allegedly constituted the breach of the covenant, (3) indicate that this conduct was deliberate, and (4) show how the alleged breach caused

damage.  *See Morris v. Bank of Am. Nev.*, 886 P.2d 454, 457 (Nev. 1994).

The Court previously dismissed CASS' claim for breach of the implied covenant of good faith and fair dealing because it was derivative of CASS' contract claims, which the Court had dismissed for failure to state a claim.  Doc. #25 at 8.  Since the Court has not dismissed CASS' second breach of contract claim here, CASS could allege a claim for breach of the implied covenant of good faith and fair dealing so long as the notice pleading standards are met.  The FAC alleges that PPF "deliberately contravened" the purpose of the contract between the parties and thereby "breached the implied covenant of good faith and fair dealing, in a manner that was unfaithful to the purpose and intent of the contracts, by failing to pay for the material that PPF received."  Doc. #27 ¶¶57-58.  The FAC therefore alleges the elements that are necessary to state a claim for breach of the implied covenant of good faith and fair dealing.  First, CASS identifies the contract that serves as the basis of the claim, including the contract alleged in its second breach of contract claim, which the Court has not dismissed.  Doc. #27 ¶57.  Second, CASS identifies the conduct that constituted the breach of the covenant: contravening the contract in a way that was unfaithful to its purpose.  *Id.* ¶57.  Third, CASS alleged that this conduct was deliberate.  *Id.* ¶58.  Fourth, CASS alleged damages as a result of this deliberate breach.  *Id.* ¶¶60-61.  Accordingly, the Court denies PPF's Motion to Dismiss as to CASS' claim for breach of the implied covenant of good faith and fair dealing.

    **F.**    **Quantum Meruit and Unjust Enrichment**

The theory of quantum meruit is based upon the premise that, when one renders service or transfers property that is valuable to another, which the latter accepts, a promise is implied to pay the reasonable value thereof.  *See Hannon v. Wells Fargo Home Mortg.*, No. 2:10-cv-0966, 2012 WL 2499290, *6 (D. Nev. June 26, 2012).  To establish a quantum meruit claim, "a plaintiff must show she conferred a benefit on the defendant, and the defendant appreciated, accepted, and retained the benefit under circumstances such that it would be inequitable for him to retain the benefit without paying for it."  *In re Wal–Mart Wage and Hour Employ. Pract. Litig.*, 490 F. Supp.

11

2d 1091, 1125 (D. Nev. 2007). A claim for quantum meruit is not actionable when the claim is based on an express contract. *Mobius Connections Grp., Inc. v. TechSkills, LLC*, No. 2:10-cv-1678, 2012 WL 194434, *8 (D. Nev. Jan. 23, 2012); *Leasepartners Corp. v. Robert L. Brooks Trust*, 942 P.2d 182, 187 (Nev. 1997). "Nevada treats quantum meruit claims and unjust enrichment claims very similar." *Mobius*, 2012 WL 194434, at *8.

The Court previously dismissed this claim because it was "based entirely on the alleged agreements that form the basis for CASS' first and second causes of action for breach of contract." Doc. #25 at 9. As before, CASS' claims for quantum meruit and unjust enrichment in the FAC are based on the alleged written contract between CASS and PPF. Since the Court's prior review, however, this district has rejected the argument that a claim for unjust enrichment must fail if a party did not plead the existence of an implied agreement. *Takiguchi v. MRI Int'l, Inc.*, No. 2:13-cv-1183, 2014 WL 4663851, at *11 (D. Nev. Sept. 18, 2014). The court reasoned that "an 'implied agreement' is not an element of an unjust enrichment claim." *Id.* The Court finds this to be persuasive. CASS' claims for quantum meruit and unjust enrichment could therefore survive if CASS were unsuccessful on its express breach of contract claims.

CASS alleged that it conferred a benefit on PPF, that PPF accepted and used the benefit, and that PPF retained the benefit received without paying CASS. Doc. #27 ¶¶64-72. These allegations fall squarely within the definitions of quantum meruit and unjust enrichment. *See In re Wal–Mart*, 490 F. Supp. 2d at 1125 ("As for quantum meruit, . . . a plaintiff must show she conferred a benefit on the defendant, and the defendant appreciated, accepted, and retained the benefit under circumstances such that it would be inequitable for him to retain the benefit without paying for it."); *Hannon*, 2012 WL 2499290 at *6 ("To state a valid claim for unjust enrichment, a plaintiff must allege: (1) plaintiff conferred a benefit on defendant, (2) defendant appreciated such benefit, and (3) defendant accepted and retained the benefit."). The Court therefore finds that CASS has properly pleaded claims for quantum meruit and unjust enrichment. It is immaterial that the FAC does not allege the existence of an implied contract because this is not a necessary element

of either of these claims. *See Takiguchi*, 2014 WL 4663851, at *11. Accordingly, the Court denies PPF's Motion to Dismiss CASS' quantum meruit and unjust enrichment claims.[8]

## IV. Conclusion

IT IS THEREFORE ORDERED that PPF's Motion to Dismiss (Doc. #30) is GRANTED in part and DENIED in part without prejudice. CASS shall have thirty (30) days in which to file a Second Amended Complaint if it elects to do so.

IT IS FURTHER ORDERED that CASS' and PPF's Requests that the Court take judicial notice of the documents filed in California court (Doc. #36; Doc. #39) are GRANTED.

IT IS SO ORDERED.

DATED this 5th day of March, 2015.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE

---

[8] PPF also argued that these claims were barred by the two-year California statute of limitations. As discussed *supra*, an action should not be barred by a statute of limitations at the Motion to Dismiss stage if it cannot be determined on the face of the complaint whether the action is time-barred. *See Supermail Cargo*, 68 F.3d at 1206-07.